UNITED STATES DISRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

| | | |
|---|---|---|
| JERBEIN MEJIA, | : | |
| Petitioner, | : | Case No. C-1-01-688 |
| v. | : | |
| DON DEWITT, WARDEN, | : | Judge Arthur S. Spiegel |
| Respondent. | : | Mag. Judge Jack Sherman |
| | : | |

---

## AMENDED TRAVERSE OF PETITIONER JERBEIN MEJIA

---

Jerbein Eligio Mejia
Inmate No. A391-808-00
Ross Correctional Institute
16149 State Route 104
Chillicothe, Ohio
45601-7010
(440) 539-9619

Petitioner, Pro Se


William R. Gallagher
Arenstein & Gallagher
114 E. Eighth Street
Cincinnati, Ohio 45202
wrg35@aol.com
(513) 651-5666

Attorney for Petitioner

Jim Petro (0022096)
Ohio Attorney General

Bruce D. Horrigan
Assistant Attorney General
Corrections Litigation Section
615 W. Superior Ave., 11th Fl.
Cleveland, Ohio 44113-1899
bhorrigan@ag.state.of.us
(216) 787-3030
(216) 787-3480 fax

Attorney For Respondent

MEMORANDUM

On October 9, 2001, pursuant to 28 U.S.C. § 2254, Petitioner, through counsel, filed a petition for writ of habeas corpus in the United States District Court, Southern District of Ohio, Western Division. On January 9, 2002, Respondent filed an answer and return of writ. Nearly one year later, Petitioner, pro se, began to pursue additional claims in a delayed application for reopening of direct appeal pursuant to Ohio Appellate Rule 26 (B)(2)(b). After exhausting his appeals in state court, Petitioner, pro se, filed a motion for leave to amend his habeas petition with two additional claims that were presented in his delayed application to reopen direct appeal. On August 21, 2003, this Court granted Petitioner's motion for leave to amend and ordered Respondent to file an amended answer and return of writ. On September 5, 2003, Respondent, filed his answer and return of writ. Petitioner, pro se, now files this response to Respondent's answer and return of writ.

<u>Petitioner's Adoption Of Counsel's Traverse For Claims I & II</u>

Petitioner hereby adopts word for word the traverse filed by his counsel on February 7, 2002. The response is to wit:

In his second claim for relief, Mejia has stated facts which support a finding trial counsel provided ineffective assistance of counsel. The failure of trial counsel to object to the introdiction of testimony of Agent Gramke substantially prejudiced the case. Agent Gramke provided expert testimony concerning the mental state of intent required in trafficking counts. Such testimony was improper, inadmissible and prejudicial. No trial tactic exists to excuse trial counsel's failure to object to such proffered evidence by the prosecution.

While the state Court of Appeals did render a decision concerning the question of counsel's ineffectiveness and the admission of such highly prejudicial evidence, that decision was "contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court". See § 2254 (d); <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). Specifically, <u>Daubert v. Merrel Dow</u>, 509 U.S. 579, 113 S.Ct. 2786 (1993) and <u>Khumo Tire Co. v. Carmichael</u>, 526 U.S. 137, 119 S.Ct. 1167 (1999) are decisions with which Mejia's appellate decision are contrary.

During the direct appeal, the State urged the appellate

(1)

court to disregard the improper evidence by referring to dec-
isions of state court's prior to Daubert and Khumo. (Return of
Writ, Exhibit 8 at page 12). Further, the state cited decisions
concerning the expert witness's ability to testify to the mental
state of the defendant regarding his intent. The state claimed
" a defendant's intent to sell narcotics" was proper for such
testimony. As support for this argument, the state offered a
Ninth Circuit case from 1989. (Return, Exhibit 8 at page 13).

Such expert testimony is indeed improper and not subject
to expert testimony under current established United States
Supreme Court law. In performing the "gate keeping" function
mandated by Khumo, the trial court is to make a reliablity
determination of the proffered evidence. While the test is a
flexible one, there are factors which assist the court in making
the required reliability determination. Testing, peer review,
error rate and acceptability are helpful in determing theory
or technique. Daubert at 593.

In determing the expert testimony was admissible and not
improper, the Court of Appeals adopted the State's reasoning
and cited two unreported cases decided before Daubert and Khumo.
In determing the evidence was not improper, the court was quick
to conclude trial counsel was not ineffective. (Return, Exhibit
9 at page 8).

Just recently, the Third Circuit Court of Appeals was faced

(2)

with the same question concerning admissibility of expert
testimony when it is offered to establish a defendant's mental
state in handling narcotics, specifically, the intent to
distribute the narcotics. United States v. Watson, 260 F.3d 301
(3rd Cir. 2001). In determining the evidence is inadmissible as
expert testimony, the circuit court acknowledged there are many
instances in which an officer may offer expert evidence in drug
cases. It cited a long line of cases which prohibit the same
testimony as was allowed in Mejia's case. "There is a fine line
that expert witnesses may not cross." United States v. Mitchell,
996 F.2d 419 (D.C. Cir. 1993). A prosecutor violates the Rules
of Evidence when he elicits the expert's testimony about the
mental state of the defendant. United States v. Boyd, 55 F.3d 667
(D.C. Cir. 1995) It even violates the rules if an officer refers
to the defendant's intent. United States v. Lipscomb, 14 F.3d
1236 (7th Cir. 1994).

Dewitt argues in his answer to the instant Petition that
the state court decisions regarding ineffective assistance and
prosecutorial misconduct are entitled to deference by this Court.
Citing to 28 USC § 2254(d) and Williams v. Taylor, 529 U.S. 362,
120 S.Ct. 1459 (2000), Dewitt requests this Court not review
the merits of the Petition because the state court decision is
contrary to clearly established Federal law as dertermined by
the United States Supreme Court. 28 USC § 2254(d)(1).

"A state court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in court cases." Williams at 1519.

Mejia has clearly set forth the circumstances in which the state court incorrectly applied the clearly established federal law as announced by the United States Supreme Court. For these reasons, Mejia requests a Writ Of Habeas Corpus be issued.

## Amended Response To State's Return Writ For Claims III & IV

Petitioner, Jerbein Mejia, whom shall henceforth be referred to as Petitioner, has gone to great lengths in order to submit the within amended traverse, as he does not read, write or fluently speak the English language. His retained counsel of record, has chosen not to communicate with him since the beginning of this year, which has left Petitioner with no other option but to continue in a pro se capacity. The ensuing arguments were prepared using the minimum wordage possible, and where applicable, defenses to the state's assertions have been consolidated. Petitioner only prays that the format is acceptable to this Court and, respectfully requests that his pro se status be kept in mind.

(4)

<u>Respondent's Argument That Claim III Not Presented To Ohio
Courts Nor Is Claim Cognizable In Federal Habeas Review</u>

The Respondent alleges that Petitioner "only" asserted
his sentencing claim in the context of ineffective assistance
of appellate counsel, and that the claim itself was not a
"discrete" claim, therefore, not "fairly presented" and,
argued in the state courts.

Petitioner denies that his claim was not "fairly presented"
to the state courts, but does concede that the sentencing claim
itself was in fact based upon ineffective assistance of counsel
pursuant to <u>State v. Murnahan</u>, (1992), 63 Ohio St.3d 60, 584
N.E.2d 1204 and, Ohio Appellate Rule 26 (B). Under Ohio Law, that
is the correct remedy for addressing a reversible error that
appellate counsel failed to present on direct appeal. See
<u>White v. Schotten</u>, 201 F.3d 743 (6th Cir. 2000) and, <u>Carpenter
v. Mohr</u>, 163 F.3d 938 (6th Cir. 1998). Petitioner further
maintains that although both the claim of ineffective assistance
of appellate counsel and, the illegally imposed sentence were
addressed in an individual format, they are however intermingled,
as in this instance there could not be one without the other.
The Sixth Circuit Court of Appeals has noted four (4) actions
a defendant can take which are significant to the dertermination
whether a claim has been "fairly presented", they are respectively:

(5)

(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within constitutional law. See McMeans v. Brigano, 228 F.3d 674 (6th Cir. 2000) quoting Franklin v. Rose, 811 F.2d 322.

Considering the aforementioned four (4) factors, Petitioner asserts that if this Court were to review his Application For Reopening Of Direct Appeal, Application For Reconsideration and, Memorandum Of Jurisdiction to the Ohio Supreme Court, it would clearly see that there was reliance on federal cases employing constitutional analysis, reliance upon state cases employing federal constitutional analysis and, that Petitioner did allege a denial of specific constitutional rights. (See Appendix For Motion To Stay And Abey Habeas Proceedings). Where he may not have used specific federal cases to support his illegal sentencing claim which was based upon a denial of state procedural law, he need not have, as the true focus was whether appellate counsel was ineffective for failing to raise the sentencing claim on direct appeal. The Ohio Supreme Court has held that Strickland v. Washington, 104 S.Ct. 2052 (1984), is the applicable standard to assess whether an applicant on an App.R. 26 (B) application to reopen direct appeal has raised a

(6)

"genuine issue" as to the ineffectiveness of appellate counsel.
See State v. Spivey, 701 N.E.2d 696, 697 (1998). Thus, Petitioner
focused mainly on the ineffective appellate counsel claim, as
that is the key to reopening a direct appeal. Alternately
though, Petitioner argues that he is not asking this Court for
relief on the sentencing claim, only that it determine whether
or not Petitioner has made a true showing of ineffective appe-
llate counsel and, if so, remand the cause back to the appellate
court with an order to permit Petitioner to reopen his direct
appeal. See Carpenter v. Mohr, (Mar. 12, 1997), S.D. Ohio No.
C-2-96-477, 163 F.3d 938 (6th Cir. 1998).

Next, Respondent argues alternately that Petitioner fails
to assert a cognizable claim for federal habeas review. Petit-
itioner has already clarified his position on the sentencing
claim, but will still dispute the Respondent's erroneous all-
egation through the use of controlling federal law.

The Supreme Court held in Hicks v. Oklahoma, 447 U.S. 343,
346, 100 S.Ct. 2227, 2229 (1980) that state laws guaranteeing
a defendant procedural rights at sentencing may create liberty
interests protected against arbitrary deprivation by the due
process clause of the Fourteenth Amendment. Therefore, when a
state has provided a specific method for determing whether
a certain sentence may be imposed, "it is not correct to say
that the defendant's interests in having that method adhered

(7)

to is merely a matter of state procedural law." <u>Fetterly v. Paskett</u>,997 F.2d 1295,1300 (9th Cir.1993).

In this instance, Respondent's main argument is that Petitioner included the phrase "abuse of discretion" when addressing his sentencing claim, and that an "abuse of discretion" in and of itself is insufficient to state a constitutional violation. See <u>Sinistaj v. Burt</u>, 66 F.3d 806 (6th Cir. 1995). In retrospect, Petitioner admits that the use of the phrase "abuse of discretion"may not have been the most ideal choice of wordage, and if the claim could be rewritten, the term "erred" would substitute "abuse of discretion". However,taking in the full context of the entire claim, there can be little or no doubt that Petitioner was abundantly clear in his discription of both the trial court error and precise United States Constitutional violations when he specifically stated under <u>Supporting Facts</u> in his habeas petition the following:

> "Petitioner's 5th & 14th Amendment rights to due process of law, and 8th Amendment right to be free from cruel and unusual punishment were violated, when the trial court failed to comply with the mandatory language of Ohio Revised Code §§ 2929.14 & 2929.19 (B), sentencing Petitioner to both maximum and consecutive terms without informing him in court as to why such a sentence was necessary."

Despite Petitioner's exact wording or use of the terms "abuse of discretion" the facts were incisively presented to the state

(8)

courts in the form of a due process violation based upon the fact that the trial court failed to adhere to mandatory sentencing guidelines. Petitioner's claim for relief is nearly identical to Walker v. Deeds, 50 F.3d 670-673 (8th Cir. 1995). In that case, like the case at bar, the trial court failed to make its obligatory findings at the sentencing hearing before sentencing the petitioner to the maximum allowable term. See also Campell v. Blodgett, 997 F.2d 512 at 522 (9th Cir. 1992). Alternatively though, in regard to "abuse of discretion", the United States Supreme Court has held that "...a mistake in law is a per se abuse of discretion..." See Koon v. United States, 518 U.S. 81 at 98 (1996).

**Respondent's Argument That Claims III & IV Are Waived For Purposes Of Habeas Review By Reason Of Procedural Default In State Court**

Respondent alleges that Petitioner's Amended claims of an illegally imposed sentence and, ineffective assistance of appellate counsel are waived for purposes of habeas review by reason of procedural default in state court. This allegation is based upon the fact that the state appellate court denied Petitioner's application to reopen his direct appeal because of an untimely filing and, refused to reach the merits of the claims. Respondent asserts that under Maupin v. Smith, 785 F.2d 135, 138 (1986) the claims presented are barred from habeas review.

Petitioner rejects the contention that he is procedurally barred from presenting his claims on federal habeas review, and

(9)

will demonstrate concisely through the Maupin Standard that he
is fully entitled to have his claims heard by this Court and,
that the Respondent's arguments are without merit.

## Case Facts Behind Petitioner's Delayed Filing In State Court

In September of 2002, a bilingual inmate with a working
knowledge of Ohio Law, discovered through Petitioner's trial
transcripts that he had been illegally sentenced to both
maximum and consecutive terms of incarceration, when the trial
court failed to make its [obligatory] findings under Ohio Rev-
ised Codes §§ 2929.14 & 2929.19(B) at the sentencing hearing.
Petitioner, whom is a non-English-speaking Dominican national,
was completely unaware of this error, and could not understand
why his retained counsel had not presented this on his appeal.
Two letters were subsequently sent to Petitioner's [new] habeas
counsel who consequently was also the partner of Petitioner's
attorney on direct appeal. The letters requested assistance in
filing an application for reopening of direct appeal based upon
appellate counsel's failure to raise the sentencing error. No
response ever came from counsel in regard to the letters and,
counsel failed to return calls made by Petitioner's family. (See
letters to counsel in Appendix For Motion To Stay And Abey
Habeas Proceedings)

Because counsel, for what ever reason, chose not to assist
or even reply to Petitioner's request for assistance, he had

(10)

little or no choice but to proceed in a pro se capacity. With Petitioner's assistant preparing his pleadings, a delayed application for reopening direct appeal was filed in the court of appeals. Petitioner exhaustively argued that the "good cause" provision for late filing in Oh.App.R. 26(B)(2)(b) could be met, as Petitioner <u>cannot</u> read, write or fluently speak the English language, and that his lack in understanding of the United States criminal justice system, did prohibit him from earlier detection of the claims.

Petitioner logically argued throughout his application and, two seperate affidavits that his language barrier should in and of itself demonstrate sufficient cause for not complying with Oh.App.R. 26(B)'s 90-day filing deadline and, that the court, in all respects, permit him to reopen his direct appeal.(See Application For Reopening and Affidavits in Petitioner's Appendix For Motion To Stay And Abey Habeas Proceedings)

The appellate court, having obviously failed to actually read the submitted documents, denied Petitioner leave to reopen his direct appeal, holding that: the Petitioner "had no right to counsel to assist him in filing his application", ( which notably Petitioner did not per se argue), and that his "ignorance of, or inexperience with, the law does not constitute good cause for a filing delay". The court mentioned nothing about Petitioner's failure to understand the English language, which was the principal argument presented.

(11)

<u>Standard For Determining Whether Procedural Default Should Apply</u>

Under <u>Maupin v. Smith</u>, 785 F.2d 135,138 (6th cir. 1986),
a reviewing court must utilize a four-part analysis when the
state argues that a federal habeas claim has been procedurally
defaulted in state court: (1) whether there is a procedural rule
applicable to the petitioner's claim and whether petitioner
failed to follow this rule; (2) whether the state courts actually
enforced the state procedural rule; (3) whether the state pro-
cedural rule is an adequate and independent state ground to
foreclose federal relief; and if so (4) whether the petitioner
has established cause for his failure to follow the rule and
prejudice by the alleged constitutional error. Petitioner thus
answer the four <u>Maupin</u> factors in turn:

(1) whether there is a procedural rule that is applicable to
    the petitioner's claim and whether the petitioner failed
    to follow this rule;

Petitioner concedes that there was an applicable procedural
rule in place at the time he filed his application for reopen-
ing reopening direct appeal pursuant to Ohio Appellate Rule 26
(B)(1). Said rule requiring that an application for reopening
be filed in the court of appeals within 90-days following the
denial of direct appeal. However, section (2)(b) of the same
rule provides for filing after 90-days has elapsed when "good
cause" is shown.

(12)

(2) whether the state courts actually enforced the state proced-
    ural rule;

    Petitioner concedes that the First Appellate District of
Hamilton County, did in fact enforce the state procedural rule
when denying his application for reopening of direct appeal.
The court held that: "the appellant has,..., failed to demon-
strate good cause for the filing delay. Accordingly, the court
denies his application to reopen his appeal." Neither Petitioner's
claim of ineffective assistance of appellate counsel or his
illegally imposed sentence were reviewed on their merits.

(3) whether the state procedural rule is an adequate and inde-
    pendent state ground to foreclose federal relief;

    Petitioner, in this instances asserts that Ohio's App-
ellate Rule 26(B) is not an "adequate and independent" state
ground to foreclose federal relief on his claims.

    If a petitioner fails to present a federal constitutional
claim to the state courts in the manner prescribed by the state
court's procedural rules, the state court may decline to add-
ress the claim. Wainwright v. Sykes, 433 U.S. 72 (1977). So
long as the procedural default rests upon "adequate and ind-
ependent" state grounds. Harris v. Reed, 489 U.S. 255, 262
(1989). In Harris, the United States Supreme Court held that:
"the adequate and independent state ground doctrine requires
the federal court to honor a state holding that is a sufficient

(13)

basis for the state court's judgment, even when the state court also relies on federal law." Id. at 264 n. 10. However, a state procedural ground in not adequate unless it is "strictly or regularly followed". See Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (quoting Hathorn v. Lovorn, 457 U.S. 255, 262-63 (1982).

In the case at bar, Petitioner directs this Court to the decision in Carpenter v. Mohr, (March 12, 1997) S.D. Ohio Case No. C-2-96-447, unreported, where the Eastern Division held that Ohio's procedure for reopening appeals was not a "firmly established and regularly followed" state practice precluding habeas relief. In Carpenter, the district court's decision was based on the court's belief that Ohio has inconsistently applied the good-cause standard in delayed filing under Oh.App.R. 26 (B)(2)(b). For example, in the district court's review of Ohio cases, good cause was almost never found in some appellate districts, while in others, a standard was used that nearly always allowed a finding of good cause. Additionally, the district court noted that the Ohio Supreme Court has offered little guidance in what actually constitutes good cause. As a result, the district court found that Ohio did not have an adequate state procedural rule prohibiting subsequent review of federal constitutional claims in federal court.

On appeal, the Sixth Circuit Court of appeals agreed with the district court about the lack of uniform application of

Appellate Rule 26 (B) in the Ohio courts, but found that it did not need to reach the issue. See Carpenter, 163 F.3d at 945 (1998).

(4) whether the petitioner has established cause for his fail-
     ure to follow the rule and prejudice by the alleged const-
     itutional error;

Petitioner, as "cause" for his failure to raise his sent-encing error in state court on direct appeal, asserts ineffective assistance of appellate counsel. See Gravely v. Mills, 87 F.3d 779 at 785 (6th Cir. 1996), also see Carpenter, supra, at 943.

In the case at bar, Petitioner's counsel was ineffective, as he failed to present on direct appeal, the fact that the sentencing court did not comply with Ohio Revised Codes §§ 2929.14 & 2929.19 (B), thereby sentencing Petitioner illegally to both maximum and consecutive terms. Had this claim been presented on direct appeal, petitioner [would] have won on the merits and, the cause would have been remanded back to the trial court with an order to resentence Petitioner consistent with §§ 2929.14 & 2929.19 (B). See State v. Sheppard, 124 Ohio App.3d 66 at 69-70 (1st App. Dist. 1997) and, State v. Comer, 99 Ohio St.3d 463 (2003) attached in appendix. Therefore, the aforementioned being considered, Petitioner has demonstrated sufficient "cause" for failing to present his claim on direct appeal.

Predjudice Suffered By Petitioner

Directly following Petitioner's trial, without benifit of

a presentence report or further inquiry into Petitioner's background, he was sentenced to the following terms:

Count One: 8-years mandatory (maximum sentence allowable)

Count Two: 18-months (maximum sentence allowable)

Count Three: 10-years mandatory (maximum sentence allowable)

Count Four: 10-years mandatory (maximum sentence allowable)

Count Five: 18-months (maximum sentence allowable)

Count Six: 10-years (minimum-maximum required by statute)

Count Seven: 18-months (maximum sentence allowable)

Counts 1,2,3,4,5, & 7 were ordered to be served concurrently with each other, but consecutively to Count 6. The total sentence imposed was 20-years in the Ohio Department of Corrections.

Under Ohio Law, when imposing non-minimum felony sentences on a first-time offender, a trial court is obligated to make its statutorily required findings on the record at the sentencing hearing. Comer, supra, at pg. 5 in appendix. Also, pursuant to O.R.C. § 2929.14 (E)(4) and § 2929.19 (B)(2)(c), when imposing consecutive sentences, a trial court is required to make its statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing. Comer, at pg. 4.

While consecutive sentences are permissible under the law, a trial court must clearly align each rationale with the specific finding to support its decision to impose consecutive sentences,

(16)

and these findings and reasons must be articulated by the trial court so an appellate court can conduct a meaningful review of the sentencing decision. Comer, at pg. 4.

In the instant case, Petitioner was given maximum terms on all counts without any findings or reasons being made. Count 6 of the indictment, which included a major drug offender specification, was the only offense that required without finding or reason, that a mandatory 10-year sentence be imposed, but nowhere in the Ohio Revised Code does it require that this offense be run consecutively to any other sentence imposed.

Furthermore, Counts 2, 5 & 7 were felonies of the fourth degree, and only carried the [presumption] of prison terms starting at 6-months. Count 1, was a felony of the second degree, which carried a mandatory minimum sentence of 2-years. And finally, Counts 3 & 4 were felonies of the first degree, which carried mandatory minimum terms of 3-years. The trial court though, apparently dismissing the possibility of the minimum terms addressed in O.R.C. § 2929.14 (B) for a first-time offender, imposed maximum sentences on all counts.

Although the court did run Counts 1,2,3,4,5 & 7 concurrently, the 10-year terms of Counts 3 & 4 being the longest, overlapped the others, still giving Petitioner seven (7) more years than he would have received, had the court imposed the statutory

(17)

minimum allowable. And had [all] terms been run concurrently, as is suggested under Ohio Law, Petitioner would have had a total sentence of ten years, and any argument of the imposition of maximum sentences on Counts 1,2,3,4,5 & 7 would be irrelevant.

Petitioner, at the time of his offense, was 42-years-old, a first-time offender, found guilty of non-violent offenses, and was no threat to the community in terms of committing future crimes, as directly following his sentence, he will be deported to the Dominican Republic, [prohibited] from returning to the United States. Therefore, all being considered and, under O.R.C. § 2929.14 (B), Petitioner should have received "the shortest prison term authorized for the offense", [had] the sentencing court complied with the law.

Accordingly, Petitioner contends that counsel's failure to present an error on direct appeal that resulted in an illegally imposed increase in sentence, demonstrates prejudice that "worked to his actual and substantial disadvantage." See Jamison v. Collins, 100 F.Supp.2d at 675 (S.D. Ohio 2000)(quoting United States v. Frady, 456 U.S. 152 at 168 (1982). See also Glover v. United States, 531 U.S. 198, 203-204 (2001).

(18)

Conclusion

WHEREFORE, Petitioner prays that he has demonstrated circumstances in which the state court incorrectly applied clearly established federal law as announced by the United States Supreme Court and, that this Honorable Court will in all respects issue the requested Writ Of Habeas Corpus.

Respectfully Submitted,

Jerbein Mejia, Petitioner
Counsel Pro Se

Inmate No. A391-808-00
Ross Correctional Institute
16149 State Route 104
Chillicothe, Ohio
45601-7010
(440) 539-9619


CERTIFICATE OF SERVICE

I hereby certify that true copies of the foregoing Amended Traverse with attached documents were sent via U.S. regular mail to both Bruce D. Horrigan, Assistant Attorney General, Corrections Litigation Section, 615 West Superior Avenue, 11th Floor, Cleveland, Ohio 44113-1899 and, William R. Gallagher, Arenstein & Gallagher, 114 East Eighth Street, Cincinnati, Ohio 45202 on this 2nd day of October, 2003.

Jerbein Mejia, Petitioner

(19)