# UNITED  STATES  DISTRICT  COURT
## SOUTHERN  DISTRICT  OF  OHIO
### WESTERN  DIVISION

---

Jerbein Mejia,
      Petitioner


    vs                      Case No. 1:01cv688
                              (Spiegel, J.; Novotny, M.J.)


Don Dewitt,
      Respondent

---

## REPORT AND RECOMMENDATION AND ORDER

---


Petitioner, an inmate in state custody at the Ross Correctional Institution in Chillicothe, Ohio, brings this action through counsel for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the petition, as amended, respondent's answer, as amended, petitioner's reply, as amended, and petitioner's motion that he be served with all rulings of this Court.  (Docs. 1, 3, 5, 8, 10, 11, 14).

### Procedural and Factual Background

On August 27, 1999, the  the Hamilton County, Ohio, grand jury returned a seven count indictment charging petitioner with three counts of possession of cocaine as defined in Ohio Rev. Code § 2925.11(A), three counts of preparation of cocaine for

sale as defined in Ohio Rev. Code § 2925.07(A) and one count of trafficking in cocaine as defined in Ohio Rev. Code § 2925.03(A).  (Doc. 3, Ex. 2).

On March 13, 2000, a jury found petitioner guilty as charged.  (Doc. 3, Ex. 3).  On that same date, the court sentenced petitioner to eight (8) years on count one, eighteen (18) months on counts two, five, and seven, and ten (10) years on counts three, four, and six. (Doc. 3, Ex. 4). Counts one, two, three, four, five and seven were to run concurrently with each other but consecutively to count six, amounting to an aggregated sentence of twenty (20) years.  (*Id.*).

With the assistance of counsel, petitioner filed a timely appeal to the Ohio Court of Appeals, raising the following assignments of error:

1.  The finding of guilt as to count one was against the manifest weight of the evidence.

2.  The finding of guilt as to count two was against the manifest weight of the evidence.

3.  The finding of guilt as to count one is against the sufficiency of the evidence.

4.  The finding of guilt as to count two is against the sufficiency of the evidence.

5.  It was prosecutorial misconduct for the State's prosecutor to tell the jury that appellant failed to prove an important fact to them.

6.  The finding of guilt as to count seven was against the manifest weight of the evidence.

7.  The finding of guilt as to count seven is against the sufficiency of the evidence.

8.  It was prosecutorial misconduct to provide the jury with a history of drug trafficking.

9.  It was prosecutorial misconduct for the prosecutor to vouch for his

2

witness.

    10.  Appellant was not afforded effective assistance of counsel.

(Doc. 3, Ex. 7). On December 8, 2000, the Ohio Court of Appeals overruled each assignment of error and affirmed the judgment of the trial court.  (*Id.,* Ex. 9). The Ohio Court of Appeals made the following findings of fact which are entitled to a presumption of correctness:[1]

    The evidence at trial indicated that, on August 19, 1999, a confidential informant purchased 27.04 grams of cocaine from Dennis Mikolay. Following his arrest, Mikolay informed the police that his supplier was Mejia. He told officers that he had purchased fifteen ounces of cocaine from Mejia on August 16, 1999. Mikolay stated that he had been regularly selling cocaine for Mejia for at least six months prior to his August arrest. After securing a search warrant, officers recovered a total of 466.1 grams of cocaine from a safe in Mikolay's residence.

    Agent Jay Gramke then arranged for Mikolay to buy an additional twenty ounces of cocaine from Mejia at Mikolay's residence. The purchase was negotiated on a cellular phone, and the conversation was tape-recorded. Mikolay and Mejia arranged for the drug transaction to occur at 9:00 p.m. later that day. During the conversation, Mikolay referred to the quantity of cocaine that he had purchased on August 16.

    The officers maintained surveillance of two residences in Butler County: Mejia's residence on Aster Park and another apartment in the same complex, at 5364 Blossom. The officers observed Mejia and Nicolas Pena leave the Aster Park apartment and enter the apartment at 5364 Blossom. After a short time, Mejia and Pedro Polanco left the apartment complex in a gold Honda Accord. Soon after Mejia and Polanco departed, Pena left the 5364 Blossom apartment carrying a bag

---

[1]28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner failed to rebut the court's findings with clear and convincing evidence.

and got into a white pickup truck.

The officers followed Mejia and Polanco from Butler County to a location near Mikolay's house in Green Township, Hamilton County. The officers stopped the Accord occupied by Mejia and Polanco and, a short time later, in the same location, stopped the pickup truck driven by Pena. They found approximately 563 grams of cocaine in the truck, but no contraband in the automobile. Both Mejia and Pena were found in possession of Mikolay's telephone and pager numbers.

A consensual search of Mejia's residence at 5310 Aster Park uncovered an airline baggage ticket from the Dominican Republic to New York and a paper that, according to investigating officers, documented drug transactions. A search of the 5364 Blossom residence revealed 1397.2 grams of cocaine, approximately $30,000 in cash, scales, plastic bags, a quantity of non-cocaine powder, and a number of papers reflecting drug transactions. The names on those papers matched the names listed on the paper found in Mejia's Aster Park residence. Mejia's fingerprints were found on one of the papers recovered from the Blossom apartment.

(*Id.* at 2-3).

With the assistance of counsel, petitioner filed an appeal in the Supreme Court of Ohio, raising the following propositions of law:

> **Proposition of Law One:** Whether an individual cannot possess a controlled substance which he has already sold and transferred to another party three days earlier, and that controlled substance is then secured in a safe in this other party's home.

> **Proposition of Law Two:** Whether an individual who is no longer in possession of a controlled substance cannot be held criminally liable for a charge of preparation of cocaine for sale three days after he has completed the drug sale and the cocaine is then subdivided into ounce units by the party who purchased it and now is in

4

complete possession of it.

**Proposition of Law Three:** Whether Appellant's lack of actual or constructive possession of a quantity of cocaine that has already been sold to a third party, three days previously, relieves him of any further criminal responsibility for the same quantity of cocaine and its future locations.

**Proposition of Law Four:** Whether Appellant's continued lack of actual or constructive possession of a quantity of cocaine that has been sold to a third party, who then subdivides it into smaller quantities for sale, absolves him of continued responsibility for a completed criminal act.

**Proposition of Law Five:** Whether comment from the state's prosecutor that a defendant fails to prove his voice is not the voice on a secretly tape recorded phone call negotiating a drug sale, improperly shifts the burden of proof to the accused and was prejudicial to appellant.

**Proposition of Law Six:** Whether the mere presence of a large quantity of cocaine does not mean that it is necessarily prepared for distribution.

**Proposition of Law Seven:** Whether the mere presence of a large quantity of cocaine does not mean that is it necessarily prepared for distribution.

**Proposition of Law Eight:** Whether the presentation of testimony by a police officer qualified as an expert in the manner of drug traffickers and the way they do business should have been limited to the facts and circumstances of the underlying case and not an all inclusive detailed history of drug trafficking.

**Proposition of Law Nine:** Whether vouching for a witness whose credibility is the lynchpin of the state's

5

case is prejudicial to an accused.

> **Proposition of Law Ten:** Whether the failure of trial counsel to properly attack counts one and two of the indictment as not belonging in this prosecution at any point during the trial, failure to object to improper closing argument by the state's prosecutor, failure to adequately confront the state's main witness, Dennis Mikolay on cross-examination, and failure to object to improper testimony on the history of drug trafficking did not afford appellant with effective assistance of counsel as contemplated in the Sixth and Fourteenth amendment to the United States Constitution.

(*Id.,* Ex. 11). On April 4, 2001, the Supreme Court of Ohio declined jurisdiction to hear the case and dismissed the appeal as not involving any substantial constitutional question. (*Id.,* Ex. 13).

On December 2, 2002, petitioner filed a pro se delayed application for reopening the appeal pursuant to Ohio Appellate Rule 26(B). (Doc. 6, Ex. C). Petitioner argued that his appellate counsel was ineffective for failing to argue on appeal that the trial court abused his discretion and violated his right to due process by failing to make findings on the record required by Ohio Rev. Code § 2929.14 and § 2929.19(b) to support imposition of a maximum and consecutive sentence. (*Id.*). On March 11, 2003, the Ohio Court of Appeals denied petitioner's application because petitioner failed to show good cause for his untimely filing. (Doc. 6, Ex. D). Petitioner's further appeal to the Ohio Supreme Court resulted in a June 11, 2003 entry dismissing petitioner's appeal as not involving any substantial constitutional question. (Doc. 8, attachment).

Petitioner filed the instant petition for a writ of habeas corpus[2] pursuant to 28 U.S.C. § 2254, raising the following grounds for relief and supporting facts which are quoted verbatim:

---

[2]Petitioner filed his first petition on October 9, 2001 with the assistance of counsel which included the first two grounds for relief. (Doc. 1). In June 2003, he filed an amended petition pro se containing the third and fourth grounds for relief. (Doc. 8).

**Ground One:** The conviction was obtained through the use of prosecutorial misconduct in violation of Mr. Mejia's 6th and 14th Amendment right to a fair trial and due process of law.

**Supporting Facts:** (1) Prosecutor improperly shifted the burden of proof to the defendant; (2) Prosecutor improperly vouched for the credibility of his witnesses, (3) Prosecutor… [sic]

**Ground Two:** The conviction was the result of ineffective assistance of trial counsel in violation of Mr. Mejia's 6th and 14th Amendment right to a fair trial, effective representation and due process of law.

**Supporting Facts:** Trial counsel failed to object to specific instances of prosecutorial misconduct, failed to object to highly prejudicial and irrelevant evidence and failed to adequately cross-examine the primary prosecution witness.

**Ground Three:** The trial court abused its discretion when it imposed maximum and consecutive terms of incarceration.

**Supporting Facts:** Petitioner's 5th & 14th Amendment rights to due process of law, and 8th Amendment right to be free from cruel and unusual punishment were violated, when the trial court failed to comply with the mandatory language of Ohio Revised Code §§ 2929.14 and 2929.19(B), sentencing Petitioner to both maximum and consecutive terms without informing him in court as to why such a sentence was necessary.

**Ground Four:** Appellate counsel was ineffective for failing to present a reversible trial court sentencing error.

**Supporting Facts:** Petitioner's 6th Amendment right to

7

have effective assistance of appellate counsel, and 5th & 14th Amendment rights to due process of law were violated when counsel failed to present a sentencing error that under Ohio Revised Code §§ 2929.14 & 2929.19(B) and controlling case law, would have constituted a remand with an order for resentencing.

(Doc. 1 at 5, Doc. 8 at 3-4).

In his answer, as amended, respondent argues that petitioner's first, third and fourth claims are waived due to a procedural default in the state courts, that petitioner's first and second claims lack merit, and that petitioner's third claim is non-cognizable on habeas corpus review.    (Doc. 10).

## OPINION

### I.  Petitioner's claims of prosecutorial misconduct in closing argument have been waived.

As his first ground for relief, petitioner argues that the prosecutor engaged in improper conduct during his closing argument by shifting the burden of proof to petitioner and by vouching for a state's witness.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c)*; see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971).  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If petitioner fails to fairly present his claims through to the state's highest court or commits some other procedural default relied on to preclude review of the merits of petitioner's claims by the state's highest court, and if no avenue of relief remains

open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the petition is subject to dismissal with prejudice on the ground that petitioner has waived his claims for habeas corpus relief. *See O'Sullivan,* 526 U.S. at 847-848; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). If, because of a procedural default, petitioner has not had his claims considered by the state's highest court and he can no longer present his claims to the state courts, he has waived the claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

A "fundamental miscarriage of justice" occurs only in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995). To be credible, such a claim "requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup,* 513 U.S. at 324. In order to obtain habeas review of the merits of a procedurally-defaulted claim under the "actual innocence" exception, the otherwise-barred petitioner "must show it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of all the evidence, "including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Id.* at 327-28.

It is well-settled that, on federal habeas corpus review, a court may be barred from considering an issue of federal law from a judgment of a state court if the state judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *Harris v. Reed,* 489 U.S. 255, 260-62 (1989). The "adequate and independent state ground" doctrine has been applied to state decisions refusing to address the merits of a federal claim because of violations of state procedural rules, including the failure to make a timely objection at trial. *Id.* at 261; *Wainwright,* 433 U.S. at 86-87; *see also McBee v. Grant,* 763 F.2d at 813. An adequate and independent finding of procedural default will

9

preclude habeas corpus review of the federal claim, unless the petitioner can show "cause" for the default and "prejudice" as a result of the alleged violation of federal law, or demonstrate that failure to consider the federal claim will result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262. A procedural default does not bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. *Harris,* 489 U.S. at 263. When the last reasoned state court decision rests both on a procedural default and an alternative ruling on the merits, the claim is barred from federal habeas review. *Coleman,* 501 U.S. at 729; *Harris,* 489 U.S. at 264 n.10; *McBee v. Abramajtys,* 929 F.2d 264, 267 (6th Cir. 1991); *McBee v. Grant,* 763 F.2d at 813. In cases where the last state court to render a reasoned opinion on the claim explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

The rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the state courts is deemed adequate or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992), *cert. denied,* 507 U.S. 932 (1993). To be considered regularly followed, a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410 n. 6 (1989); *see Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000), *cert. denied,* 531 U.S. 1082 (2001). Furthermore, adequacy requires application of the rule "evenhandedly to all similar claims." *Hathorn v. Lovorn,* 457 U.S. 255, 263 (1982); *Maes v. Thomas,* 46 F.3d 979, 986 (10th Cir.), *cert. denied,* 514 U.S. 1115 (1995).

In this case, the last state court to issue a reasoned decision addressing petitioner's claim of prosecutorial misconduct in closing argument was the Ohio Court of Appeals. In rejecting petitioner's claim, the court clearly and expressly relied on petitioner's violation of Ohio's contemporaneous objection rule when it stated:

> Mejia failed to object to any of the alleged instances of misconduct, and we therefore review the issues under a plain-error standard of review.

(Doc. 3, Ex. 9 at 7). The court then proceeded to consider petitioner's claim for "plain

error." However, it is well-settled in the Sixth Circuit that a state appellate court's review for plain error does not constitute a waiver or non-enforcement of the state procedural bar by the reviewing court. *See, e.g., Mason v. Mitchell,* 320 F.3d 604, 635 (6th Cir. 2003); *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir. 2000) (citing *Paprocki v. Foltz,* 869 F.2d 281, 284-85 (6th Cir. 1989)), *cert. denied,* 532 U.S. 989 (2001). The Ohio Supreme Court's later unexplained decision summarily declining jurisdiction to hear the case and dismissing the appeal "as not involving any substantial constitutional question" must be presumed to rely on the same procedural default. *Taqwiim v. Johnson,* 229 F.3d 1154 (table), No. 99-3425, 2000 WL 1234322, at **3 (6th Cir. Aug. 22, 2000) (unpublished) (citing *Levine v. Torvik,* 986 F.2d 1506, 1517 n.8 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), and *overruled in part on other grounds by Thompson v. Keohane,* 516 U.S. 99 (1995), and *Ylst,* 501 U.S. at 803-04), *cert. denied,* 531 U.S. 1089 (2001).

The state-law ground relied on by the Ohio Court of Appeals was an adequate basis for the court's decision. At the time of petitioner's conviction in 2000, it was a well-established and regularly followed practice in Ohio for appellate courts to deem any claims of error not objected to at trial as "waived" or procedurally defaulted. *See Taqwiim,* 2000 WL 1234322, at **3 (citing *State v. Brown,* 528 N.E.2d 523, 534 (Ohio 1988), *cert. denied,* 489 U.S. 1040 (1989)). It is well-settled that Ohio's contemporaneous objection rule, which was enforced by the Ohio Court of Appeals in this case, constitutes an adequate and independent state procedural bar that may be relied on as grounds for rejecting a claim of error. *See, e.g., Hinkle,* 271 F.3d at 244. Therefore, petitioner's failure to object at trial constitutes a procedural default which may serve to bar federal habeas review of his claim alleged in ground one concerning prosecutorial misconduct in closing argument.

Petitioner has waived the constitutional claim absent a showing of cause and prejudice or that a fundamental miscarriage of justice will occur if the underlying merits of the claim are not reviewed because he is actually innocent of the offense. *See Coleman,* 501 U.S. at 750; *Murray,* 477 U.S. at 485; *Engle,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87. Petitioner advanced ineffective assistance of trial counsel as cause. (*See* Doc. 1 at 5). Ineffective assistance of counsel may constitute cause for a procedural default. *Murray,* 477 U.S. at 488.

To demonstrate that counsel's performance was constitutionally ineffective, petitioner must show: (1) his counsel made such serious errors that he was not

11

functioning as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner made an insufficient showing on either ground. *See id.* at 697.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *See id.* at 688. Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. *Id.* at 689. In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See id.*

In order to satisfy the second "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different. *See id.* at 694. A showing by petitioner that the alleged errors had "some conceivable" effect on the outcome of the proceeding is insufficient to meet this standard. *See id.* at 693. However, by the same token, petitioner need not demonstrate that his counsel's conduct "more likely than not" altered the outcome of the proceeding to establish prejudice. *See id.* Petitioner has met his burden if he shows that the decision reached would "reasonably likely have been different absent the errors." *See id.* at 695.

Petitioner is not entitled to federal habeas corpus relief, unless the state court's adjudication of his claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998). A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme

Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942.

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.). Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942. The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

When a state court fails to address the constitutional issues raised, the federal court conducts a de novo review, instead of applying the AEDPA standard of review which applies only to cases "adjudicated on the merits in state court." *Maples v. Stegall,* 340 F.3d 433, 436-437 (6th Cir. 2003) (finding that in *Wiggins v. Smith,* 123 S.Ct. 2527 (2003), Supreme Court reviewed portion of claim not analyzed by state court de novo, without deferring to the state court or applying AEDPA's standard of reasonableness); *see Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003); *Davis v. Secretary for the Dep't of Corrections,* 341 F.3d 1310, 1312 (11th Cir. 2003). *Cf. Wynne v. Renico*, No. 01-10247-BC, 2003 WL 22054238, at *12 (E.D. Mich. Sept. 2, 2003) (district court applied more stringent AEDPA standard where the state court had not directly addressed the constitutional claims, acknowledging that *Maples* and *Wiggins* call for a de novo review and not the more deferential AEDPA review).

Citing the *Strickland* decision, the Ohio Court of Appeals found that petitioner's trial counsel was not deficient in failing to object to the prosecutor's

closing argument because the state's argument was not improper. (Doc. 3, Ex. 9 at 9). The Court addressed petitioner's first  prosecutorial misconduct claim as follows:

> Mejia first argues that the prosecutor impermissibly shifted the burden of proof to the issue of identity. We disagree. During opening statement, Meija's trial counsel told the jury that the evidence would demonstrate that when the authorities recorded the telephone drug transaction between Mikolay and another person, that person was not Mejia. Then, during closing argument, the assistant prosecutor recounted that there was no evidence challenging Mikolay's assertion that he was speaking to Mejia. Because the prosecutor's statements were fair comments on the state of the evidence adduced at trial, and because Mejia's counsel had in effect invited comment on the issue in question, we find no impropriety in the prosecutor's remarks.

(*Id.* at 8).

> In his opening statement defense counsel made the following statements:

> Either way, Mr. Milokay agrees to try to set up a deal for cocaine. After all, he's in a bad situation. The evidence is going to show that he's in a bad situation. He calls a pager number. He says it's a pager number for my client, Mr. Mejia. We're going to provide evidence that that pager is not Jerbein Mejia's pager. We are going to provide evidence that this pager belongs to the gentlemen who deals with Dennis Milokay, Nicolas Pena.

> There's a taped conversation that takes place between Dennis Milokay and another gentlemen.  No dispute of the drug deal set up. Obviously, what is in dispute is who sets that up. The gentleman on the other line does not identify himself. They do talk about the quality of cocaine. And the evidence is going to point out that Milokay complains about the quality of the 15 ounces he bought just from Pena. During this conversation, as I said, nobody identifies himself. Clearly a drug transaction. And the evidence is just going to show that there's someone on the other end of the line, Latin-American accent.

> We are going to provide clear testimony that Nicolas Pena is

14

Latin-American. While these three are under surveillance, they leave. They leave in two separate cars, at two separate times. The area where RENU is trying to say that is a drug house, where the drugs were found on Blossom, these two gentlemen leave, take off. It was only after that time that this gentleman leaves with the bag in his hand. All three are arrested a short time later and charged with these crimes.

Ladies and gentlemen, we're going to put on evidence to show that this gentleman right here is the one that's responsible for all these incidents on August 19th.

(Doc. 3, Ex. 14, Tr. 143-144). Petitioner argues that his counsel should have objected to the following statements of the prosecutor during closing argument:

And, remember, opening argument, opening statement, the defense told you we're going to prove to you that it wasn't Mejia on the tape. Did you hear any evidence? Because that's what it's all about here. Did you hear any evidence that anybody, other than Mejia, made that phone call? They told you they would present that evidence and did not, and I expect you to consider that when you go back to deliberate.

When the defense made their opening statement, they told you we are going to prove to you, ladies and gentlemen of the jury, that Nicolas Pena made a phone call, not my client. That's what they told you. And what happened? You hear that evidence, and say, I guess that's not going to work. Couldn't do it because it's not true. It wasn't there.

(*Id*. at Tr. 434, 465).

Although the "invited response rule" is not to be used as an excuse for improper argument, a prosecutor's comments are to be evaluated in light of the defense argument that preceded them. *Darden v. Wainwright,* 477 U.S. 168, 178 (1986); *United States v. Young,* 470 U.S. 1, 11 (1985); *see United States v. Briggs,* 27 Fed.Appx. 547, 551, 2001 WL 1609849, at **3 (6th Cir. Dec. 12, 2001) (and cases cited therein), *cert. denied,* 535 U.S. 1011 (2002); *Gordon v. Kelly,* No. 98-1905, 2000 WL 145144, at **7 (6th Cir. Feb. 1, 2000); *United States v. Hickey,* 917 F.2d 901, 905 (6th Cir. 1990).

15

In this case, trial counsel was not remiss in failing to object to the prosecutor's comments. In his remarks, the prosecutor expressly referred to defense counsel's representation in his opening statement that the defense would prove that Pena was the drug dealer and not his client, noting that the defense had failed to fulfill its promise. The prosecutor was thereby directly responding to statements made by the defense in its opening statement. Moreover, the prosecutor did not state that legally petitioner had the burden of showing that Pena was the guilty party. Instead he rather explicitly stated that petitioner had represented that he would prove that Pena was the individual dealing drugs, further pointing out that petitioner had not adduced evidence to this effect. These comments do not improperly portray the burden of proof in this case. *Cf. Spencer v. Elo,* No. 02-1840, 2003 WL 21805270, at *2 (6th Cir. Aug. 5, 2003) (prosecutor did not shift burden of proof when he mentioned defense counsel's failure to call certain witnesses because he was responding to defense counsel's statements that prosecution had failed to present witnesses to corroborate events). In his charge to the jury, the trial court stated that the defendant is presumed innocent and must be acquitted unless "the state produces evidence" which convinces the jury "beyond a reasonable doubt of every essential element of the crimes charged." (Doc. 3, Ex. 14, Tr. 473). During his closing argument, the prosecutor emphasized repeatedly that the state had the burden of proof in this case. (*Id.* at Tr. 431). The jury instructions, together with the prosecutor's statements concerning the government's burden of proof, served to neutralize any remote implication that petitioner had the burden of demonstrating that someone other than petitioner was the individual responsible for the drug crimes. Under these circumstances, defense counsel's failure to object in closing argument did not constitute deficient performance or prejudice petitioner's case.

Accordingly, the decision of the Ohio Court of Appeals that defense counsel was not constitutionally ineffective in failing to object to the prosecutor's comments in closing argument that defense counsel had not shown that Pena was the individual arranging the drug sale was neither contrary to nor involved an unreasonable application of the Supreme Court's standard in *Strickland*, and was not unreasonable in light of the record evidence.

Vouching occurs when a prosecutor, on his own or through the testimony of a government witness, expresses a personal belief in the credibility of a witness. *United States v. Austin,* Nos. 97-4197, 97-4239, 97-4386, 97-4408, 98-3105, 2000 WL 32017, at **14 (6th Cir. Jan. 4, 2000), *cert. denied,* 529 U.S. 1081, and *cert. denied,* 529 U.S. 1119 (2000); *United States v. Francis,* 170 F.3d 546, 550 (6th Cir. 1999);

*United States v. Piva,* 870 F.2d 753, 760-761 (1st Cir. 1989). The prosecutor may not argue that a witness is credible based on the government's reputation or prestige or based on information not formally before the jury. *See Maier v. Montana,* 58 Fed.Appx. 259, 261, 2003 WL 117993 at **1 (9th Cir. 2003) (citing *United States v. Necoechea,* 986 F.2d 1273, 1278 (9th Cir. 1993)); *United States v. Hernandez*, 921 F.2d 1569, 1573 (11th Cir. ), *cert. denied,* 500 U.S. 958 (1991). Although counsel may not express a personal belief or opinion as to the truthfulness of a witness, he is allowed to argue that a witness appears credible based on reasonable inferences from the evidence. *United States v. Collins*, 78 F.3d 1021, 1039, 1040 (6th Cir.), *cert. denied,* 519 U.S. 872 (1996); *United States v. Bright,* 630 F.2d 804, 824 (5th Cir. 1980).

With respect to petitioner's claim of improper vouching, the state appellate court stated:

> Mejia also contends that the assistant prosecuting attorney engaged in misconduct by vouching for Mikolay's testimony. We disagree. In his closing argument, Mejia's trial counsel stated that he would not believe a word that Mikolay had said because of Mikolay's involvement with drugs, and because of his motivation to lie to secure a lesser sentence for himself. In response, the prosecutor merely emphasized the consistencies in Mikolay's testimony and stated that, based upon these consistencies, it was unlikely that his testimony had been fabricated. These were proper comments on the state of the evidence adduced at trial, and again we find no impropriety.

(Doc. 3, Ex. 9 at 8-9).

Petitioner argues that the following statements of the prosecutor during closing argument constitute improper vouching:

> It is impossible for Mikolay to have been lying to you or to me, or to the officers. It is absolutely impossible, because the things that he told the police, and the things that happened that verify what he told the police, are so many and so numerous, that it's totally impossible for him to have made it up.

(Doc. 3, Ex. 14, Tr. 467-468). The prosecutor reiterated these comments as to the

impossibility that Mikolay had lied at other points of his closing argument, following them up with references to the evidence which support Mikolay's veracity, as follows:

> Let's examine that for a minute. If Pena is the dealer and not Mejia, and all Mikolay cares about is helping is to nail the dealer, why does he have to throw Mejia into it? Pena is the dealer, got him with the dope, he brings me dope, end of story. He doesn't know they're looking for Mejia. Do you think that RENU called Mikolay in January 1999 and said, hey, we're targeting this guy to sell you dope, his name is Mejia, when we bust him, will you tell us that he was selling you the dope?
>
> They would have been happy with Pena, but he tells them Mejia, he tells them Polanco. It's impossible for him to have lied, because what are they saying? Mikolay pulls this innocent guy's name out of a hat and says this guy is my dealer. Of course I know he's not, but I know he's not, but they want help, so I'm going to give him this guy's name. Does Mikolay know when they call, and within 45 minutes, Mejia is there, that he knows that Mejia is going to have his phone number in his pocket? Is he that lucky? Was he that lucky that he just happened to pick somebody out of all the universe of people, some innocent party, that the guy gets busted a few yards from his house, a couple blocks, with Mikolay's phone numbers in his pocket? It's impossible that he would have lied.

(*Id.* at Tr. 468-469; *see* Tr. 470, 471). In his closing argument defense counsel questioned the credibility of Mikolay, stating, for example, "no possible way that you can believe Mr. Mikolay at this trial" and "to believe Dennis Mikolay is what you're going to have to do, and I suggest that's impossible, that's impossible." (*Id.* at Tr. 455, 462; *see* Tr. 461).

The record demonstrates that in his closing argument, the prosecutor was responding to defense counsel's arguments concerning Mikolay's credibility. Defense counsel insisted that it was impossible to believe Mikolay, the state's primary witness, and the prosecution responded that it was impossible for Mikolay to have lied. Considering the language he used and the context of his remarks, the prosecutor did not express his personal opinion as to Mikolay's veracity, but rather argued that the evidence at trial demonstrated that Mikolay was truthful. Accordingly, the

prosecutor's comments do not constitute improper vouching.  Since the prosecutor's statements were not improper, trial counsel's failure to object to them did not constitute deficient representation.

The decision of the Ohio Court of Appeals that defense counsel was not constitutionally ineffective in failing to object to the prosecutor's comments in closing argument that it was impossible for Mikolay to have been lying was neither contrary to nor involved an unreasonable application of the Supreme Court's standard in *Strickland*, and was not unreasonable in light of the record evidence.

Accordingly, this Court rejects petitioner's claim that ineffective assistance of trial counsel constituted cause for the procedural default of his prosecutorial misconduct claims. Petitioner has not provided any other explanation for his procedural default nor has he offered any evidence that he is innocent of the charges. Without a demonstration of his actual innocence, petitioner does not meet the fundamental miscarriage of justice exception which would allow this Court to consider the merits of his prosecutorial misconduct claims.

Accordingly, petitioner has waived his claims that he was denied due process of law when the prosecutor made improper remarks during his closing argument, asserted in ground one in the petition.

## II.  Petitioner is not entitled to habeas corpus relief with respect to his ineffective assistance of trial counsel claims asserted in ground two of the petition.

As his second ground for relief, petitioner asserts that his counsel was constitutionally ineffective for: 1. failing to object to the prosecutor's improper remarks during closing argument; 2.  failing to object to the testimony of police officer, Jay Gramke, concerning the standard practices of drug dealers and 3.  failing to cross-examine a prosecution witness, Dennis Mikolay, adequately.

In assessing whether petitioner established cause in the form of deficient representation at trial to excuse the procedural default of his prosecutorial misconduct claims, this Court determined that petitioner was not deprived of effective assistance of counsel when counsel failed to object to the prosecutor's remarks in closing argument concerning Mikolay's credibility and concerning the defense's failure to adduce evidence that Mejia was not the individual arranging the drug sale.

19

Accordingly, petitioner is not entitled to habeas corpus relief with respect to his claim in ground two that his attorney was constitutionally ineffective for failing to object to the prosecutor's comments in closing argument.

The Ohio Court of Appeals did not specifically address petitioner's contention that his counsel was ineffective for failing to object to Agent Gramke's testimony. (Doc. 3, Ex. 9)  The Ohio Court of Appeals did however address petitioner's related claim that the prosecutor engaged in misconduct by eliciting the testimony of Agent Gramke concerning standard practices of cocaine dealers, as follows:

> As we have held in previous cases, a qualified police officer may testify as to the general practices of drug traffickers to demonstrate that the defendant's conduct was consistent with those practices or customs. Gramke's testimony in the case at bar did not go beyond permissible bounds.  Gramke testified as to his extensive experience in investigating cocaine-trafficking operations and explained how the operation in the case at bar was consistent with those he had investigated in the past.  We find no impropriety in the prosecutor eliciting that testimony.  Moreover, we find no merit in Mejia's suggestion that the contested testimony was a central part of the state's case against him.  Ample evidence in the record other than the challenged testimony pointed to Mejia's guilt, and in the context of the entire proceedings, the challenged testimony was inconsequential.

(Doc. 3, Ex. 9 at 8) [citations omitted]. In Ohio, testimony by a police officer concerning the typical practices of drug dealers is admissible to prove a defendant's intent to traffic drugs or a defendant's possession and knowledge of illegal drugs. *See, e.g., State v. Poole,* No. 80250, 2002 WL 31195334, at *4 (Ohio Ct. App. Oct. 3, 2002); *State v. Fellows*, No. 70900, 1997 WL 272378, at *6 (Ohio Ct. App. May 22, 1997); *State v. Reynolds,* No. 66417, 1994 WL 693476, at *3 (Ohio Ct. App. Dec. 8, 1994); *State v. Armstrong,* No. C-910637, 1992 WL 129457, at *2 (Ohio Ct. App. June 10, 1992).  Since such evidence is admissible, defense counsel's failure to object to Officer Gramke's testimony did not constitute deficient performance.[3]  Moreover,

---

[3]In his traverse, petitioner argues that the Ohio Court's decision concerning the admissibility of Agent Gramke's testimony on the drug trade is contrary to *Kumho Tire Co., Ltd. v. Carmichael,*526 U.S. 137 (1999), and *Daubert v. Merrell Dow Pharmaceutical, Inc.,* 509 U.S. 579 (1993). (*See* Doc. 5).  In *Daubert,* the Court held that the Federal Rules of Evidence "assign

petitioner has not demonstrated that had defense counsel objected, a reasonable probability exists that the results of the proceedings would have been different. The evidence supplied by Agent Gramke concerning the illegal drug trade was primarily background information. What brought about petitioner's conviction was the tape of his telephone call arranging a drug transaction, evidence of the officer's surveillance of petitioner carrying out the transaction and the discovery of cocaine and drug related items in the apartments searched. Since petitioner has failed to demonstrate that counsel's performance was deficient and prejudicial, he has not established that his counsel was constitutionally ineffective in failing to object to Agent Gramke's general testimony on the drug trade.[4]

As his final instance of attorney error, petitioner argues that his counsel failed

---

to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597. The Court designated factors which are helpful in determining reliability of scientific evidence including testing, peer review, error rates and "acceptability" in the scientific community. *Id.* at 593-594. In *Kumho Tire Company*, the Supreme Court held that the *Daubert* standard applies to all expert testimony admitted pursuant to Fed Rule Evid. 702, not only to scientific testimony. 526 U.S. at 140, 146, 149. Petitioner fails to explain how these decisions, which interpret a federal rule of evidence and do not involve federal constitutional principles applicable to the states, are relevant on habeas corpus review. *Norris v. Schotten,* 146 F.3d 314, 335 (6th Cir.), *cert. denied,* 525 U.S. 935 (1998); *Smith v. Borg,* No. 91-15948, 1993 WL 285910, at **1 (9th Cir. July 29, 1993) (*Daubert* applicable to federal trials, not relevant for state prisoner on habeas corpus review), *cert. denied,* 511 U.S. 1088 (1994); *see Kinder v. Bowersox,* 272 F.3d 532, 545 n.9 (8th Cir. 2001). In any event, petitioner fails entirely to dispute Agent Gramke's expertise.

In his traverse, petitioner further argues that expert testimony may not be used to demonstrate petitioner's intent, citing several federal circuit court cases which prohibit expert testimony by law enforcement directed to the issue of intent in drug cases. Again, such cases are based on violations of the federal rules, particularly, Fed. R. Evid. 704(b). *See, e.g., United States v. Watson,* 260 F.3d 301, 308 (3rd Cir. 2001). Moreover and most importantly, in this case, the expert testimony of the agent included background information on the drug trade, but not testimony concerning petitioner's intent. The agent provided an explanation of a controlled buy, the role of confidential informants, the hierarchy in the drug chain, and the price of cocaine. (Doc. 3, Ex. 14, Tr. 195-202). This testimony was helpful to the jury in understanding the evidence. Petitioner fails to direct this Court to any portion of Officer Gramke's direct examination in which the prosecution elicited evidence of petitioner's mental state.

[4]The Court applies a de novo standard of review to this claim, rather than the AEDPA reasonableness standard, because the state court did not address this particular claim of ineffective assistance of counsel. *See Maples,* 340 F.3d at 436-437.

to adequately cross-examine Dennis Mikolay.  The Ohio Court of Appeals rejected petitioner's claim, as follows:

> In this regard, Mejia fails to specify how counsel was deficient, and we have found no deficiencies in our review of the trial transcript.  Counsel aggressively examined Mikolay, emphasizing inconsistencies in his testimony, as well as the fact that Mikolay had not come forward with his statement to the police until his arrest on related drug charges.  We therefore hold that Mejia has failed to demonstrate that he was denied the effective assistance of trial counsel, . . . .

(Doc. 3, Ex. 9 at 9).  Since petitioner has failed to specify how defense counsel's cross examination was lacking, he has not established that his counsel was constitutionally ineffective.  Accordingly, the decision of the Ohio Court of Appeals that defense counsel was not constitutionally ineffective in his cross-examination of Dennis Mikolay  was neither contrary to nor involved an unreasonable application of the Supreme Court's standard in *Strickland*, and was not unreasonable in light of the record evidence.

In conclusion, petitioner is not entitled to habeas corpus relief with respect to his ineffective assistance of counsel claims alleged in ground two of the petition.

### III.  Petitioner waived his fourth ground for relief by committing a procedural default in state court.

In ground four of the petition, petitioner alleges that his appellate counsel was constitutionally ineffective for failing to argue that his constitutional rights were violated when the trial court imposed maximum and consecutive sentences without orally informing him of the reasons at his sentencing hearing , as required by Ohio Rev. Code § 2929.14 and § 2929.19(B).[5]

---

[5]In this case, the state trial court recorded the statutory findings on a form entitled "Felony Sentencing Findings" on the day of sentencing and they were entered on the docket sheet.  (*See* Doc. 3, Ex. 1 at 5; Doc. 6, Ex. C, attachment.)  In *State v. Comer*, 793 N.E.2d 473 (2003), the Ohio Supreme Court held that pursuant to Ohio Rev. Code § 2929.14(E)(4) and § 2929.19(B)(2) (c), when imposing consecutive sentences, and pursuant to § 2929.14(B) when imposing a non-minimum sentence on a first offender, a trial court is required to make the statutory findings orally at the sentencing hearing. Before *Comer*, there had been a split of

Petitioner presented his ineffective assistance of appellate counsel claim in his application for reopening pursuant to Rule 26 (B) of the Ohio Rules of Appellate Procedure.[6]   (Doc. 6, Ex. C).  The Ohio Court of Appeals denied the application because petitioner had failed to show good cause for his untimely filing.  (Doc. 6, Ex. D).  The Ohio Court of Appeals, was the last court to render a reasoned opinion on petitioner's claim.  The Ohio Supreme Court's later unexplained decision summarily dismissing the appeal "as not involving any substantial constitutional question" must be presumed to rely on the same procedural default.  *Taqwiim v. Johnson,* 229 F.3d 1154 (table), No. 99-3425, 2000 WL 1234322, at **3 (6th Cir. Aug. 22, 2000) (unpublished) (citing *Levine v. Torvik,* 986 F.2d 1506, 1517 n.8 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), and *overruled in part on other grounds by Thompson v. Keohane,* 516 U.S. 99 (1995), and *Ylst,* 501 U.S. at 803-04), *cert. denied,* 531 U.S. 1089 (2001).

The state law ground relied on by the Ohio courts in rejecting petitioner's claims, the "good cause" requirement in Rule 26(B), was adequate.  In 2002, at the

---

authority as to whether the findings could be made in written form in a journal entry or had to be made orally at the sentencing hearing.  *Comer,* 793 N.E.2d at 467.  Prior to the *Comer* decision, the Ohio Court of Appeals, First Appellate District, held that it was sufficient if the findings were marked on a felony sentencing worksheet, and did not require the state trial court to verbalize them at the sentencing hearing.  *See State v. Nyel,* No. C-020640, 2003 WL 22149318, at *3 (Ohio Ct. App. Sept. 19, 2003).   The *Comer* Court determined that appellate counsel could not be considered ineffective for failing to challenge the trial court's failure to make the findings at the sentencing hearing when the appellate district at the time of the appeal did not require oral findings.  793 N.E.2d at 465.  Accordingly, assuming *arguendo*, that petitioner had not waived his ineffective assistance of appellate counsel claim and this Court could have considered the substance of the claim, this Court would have likely rejected the claim on the merits.

[6]Ohio R. App. P. 26 (B)(1) provides:

A defendant in a criminal case may apply for reopening of the appeal  from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel.  An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

23

time of petitioner's proceedings to reopen his appeal, it was a well-established, regularly followed practice in Ohio for the courts to foreclose review of untimely ineffective assistance of appellate counsel claims brought in an application to reopen the appeal based on the lack of good cause. *Monzo v. Edwards,* 281 F.3d 568, 577-578 (6th Cir. 2002); *see Knuckles v. Brigano,* 70 Fed.Appx. 830, 841, 2003 WL 21771949, at **11 (6th Cir. July 22, 2003), *petition for cert. filed* (U.S. Sept. 25, 2003) (No. 03-6884); *Lewis v. Randle,* 36 Fed.Appx. 817, 819, 2002 WL 847985, at **2 (6th Cir. April 30, 2002), *cert. denied,* 537 U.S. 1137 (2003).

Accordingly, petitioner's claim for relief is barred from review by this Court absent a showing of cause and prejudice, or that a fundamental miscarriage of justice will result if the claim is not considered. As cause for petitioner's delay in timely filing his 26(B) application, petitioner advances his inability to speak English and his ignorance of the legal system. (Doc. 6, Ex. C at 2). To establish cause to excuse a procedural default, petitioner must show that "some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Carrier,* 477 U.S. at 488. An inability to speak or comprehend the English language is not considered such an external obstacle. *Vasquez v. Lockhart,* 867 F.2d 1056, 1058 (8th Cir. 1988), *cert. denied,* 490 U.S. 1100 (1989); *Fabian v. Herbert,* No. 00CIV5515(SHS)(RLE), 2003 WL 173910, at *4 (S.D.N.Y. Jan. 23, 2003); *United States ex rel. Fernandez v. Detella,* No. 96 C 2340, 1996 WL 494272, at *2 (N.D. Ill. Aug. 27, 1996); *United States v. Carasquilla-Garrido,* Crim. A. No. 89-452, 1992 WL 298004, at *1 (E.D. La. Oct. 7, 1992). Ignorance of the law or legal system is also not sufficient to establish cause. *See McCleskey v. Zant,* 499 U.S. 467, 502 (1991); *Rodriguez v. Maynard,* 948 F.2d 684, 688 (10th Cir. 1991) (and cases cited therein); *Vasquez,* 867 F.2d at 1058 ; *see also Hall v. United States,* 41 Fed. Appx. 743, 744, 2002 WL 1378222, at **1 (6th Cir. June 24, 2002), *cert. denied,*124 S.Ct. 213 (U.S. 2003). These are factors internal to the petitioner and therefore do not meet the standard for cause. *See, e.g., Coleman,* 501 U.S. at 753 ("[C]ause" is "something external to the petitioner" which "cannot be fairly attributed to him."); *United States ex rel. Wofford v. People,* No. 94 C 4687, 1995 WL 143550, at *3 (N.D. Ill. 1995), *aff'd,* 96 F.3d 1450 (7th Cir. 1996).

Since petitioner has failed to persuade this court that he is actually innocent of the drug offenses, he has not shown that a fundamental miscarriage of justice will result if his ineffective assistance of appellate counsel claim is not considered. Accordingly, petitioner has waived his ineffective assistance of appellate counsel claim asserted in ground four of the petition.

**IV.  Petitioner waived his third ground for relief alleging an error in sentencing by committing a procedural default in state court.**

As his third ground for relief, petitioner asserts that his constitutional rights were violated when the trial court imposed maximum and consecutive sentences without orally informing him of the reasons at his sentencing hearing, as required by Ohio Rev. Code § 2929.14 and § 2929.19(B).  Petitioner failed to present this claim to the Ohio appellate courts and  has therefore waived the claim on federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error, or that failure to consider the claim will result in a fundamental miscarriage of justice.  In ground four of the petition, petitioner alleges that his appellate counsel was constitutionally ineffective for failing to present this claim.  Ineffective assistance of appellate counsel may constitute cause for a procedural default,  *Murray,* 477 U.S. at 488, unless that claim also has been procedurally defaulted, *Edwards v. Carpenter,* 529 U.S. 446, 452 (2000).   Since this Court has determined that petitioner's ineffective assistance of appellate counsel claim has been procedurally defaulted, *see* Section III, *supra,*  it cannot serve as cause for petitioner's default of his sentencing claim.

Since the record does not support a finding that this is an extraordinary case in which a constitutional violation has probably resulted in the conviction of one who is actually innocent of the crime for which he was convicted, *see Murray,* 477 U.S. at 496, petitioner has not demonstrated that failure to address the sentencing claim will result in a fundamental miscarriage of justice.

Accordingly,  petitioner has waived his sentencing claim asserted in his third ground for relief and this Court is precluded from considering the claim.

## IT IS THEREFORE ORDERED THAT:

1.  Petitioner's motion requesting that the Clerk of Court serve all rulings of this Court on petitioner as well as his counsel  (Doc. 11) is GRANTED.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Docs. 1, 8) be DENIED with prejudice.

2.   A certificate of appealability should not issue with respect to the dismissal on procedural grounds of the first, third and fourth claims for relief because "jurists of reason would not find it debatable whether this Court is correct in its procedural ruling" as required under the first prong of the two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), which is applicable to procedurally-barred claims.[7]   A certificate of appealability also should not issue with respect petitioner's second claim because, for the foregoing reasons, petitioner has failed to make a substantial showing of the denial of a constitutional right that is remediable in this proceeding.  See 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).   Petitioner has not shown that reasonable jurists could debate whether this claim should have been resolved in a different manner or that the issue presented was "adequate to deserve encouragement to proceed further."   *Miller-El v. Cockrell,* 537 U.S. 322, 323-324 (2003) (quoting *Slack,* 529 U.S. at 483-84) (in turn quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).

3.   With respect to any application by petitioner for *in forma pauperis* status for the purposes of pursuing an appeal of an order adopting this report and recommendation, this Court certify that pursuant to 28 U.S.C. § 1915 (a) an appeal of this order would not be taken in "good faith," and, therefore, DENY petitioner leave to proceed on appeal *in forma pauperis.*   *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: <u>December 30, 2003</u>                      <u> S/Susan M. Novotny</u>

hr                                                               Susan M. Novotny

J:\ROSENBEH\2254(2003)\01-688waiverfor.wpd          United States Magistrate Judge

---

[7]Because this Court finds petitioner has not met the first prong of the *Slack* standard, it need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner's first, third and fourth grounds for relief state a valid constitutional claim.  *See Slack,* 529 U.S. at 484.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

------------------------------------

Jerbein Mejia,
      Petitioner


      vs                             Case No. 1:01cv688
                                         (Spiegel, J.; Novotny, M.J.)


Don Dewitt,
      Respondent     ------------------------------------

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Susan M. Novotny, United States Magistrate Judge, in the above-entitled action.  Pursuant to Fed. R. Civ. P. 72(b), any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.  Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s).  Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

27