FILED
JAMES BONINI
CLERK

2004 FEB -2 PM 1:26

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| JERBEIN MEJIA, | : | |
| Petitioner, | : | |
| v. | : | Case No. 1:01cv688 |
| DON DEWITT, | : | (Spiegel,J.; Novotny, M.J.) |
| Respondent. | : | |
| | : | |

---

**OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION
AND REQUEST FOR ISSUANCE OF COA**

---

Jerbein Eligio Mejia
Inmate Number A391-808-00
Ross Correctional Institute
16149 State Route 104
Chillicothe, Ohio
45601-7010
(440) 539-9619


Petitioner, Pro Se


Bruce D. Horrigan
Assistant Attorney General
Corrections Litigation Section
615 West Superior Avenue, 11th Fl.
Cleveland, Ohio 44113-1899
(216) 787-3030


Attorney For Respondent

## OBJECTIONS TO REPORT AND RECOMMENDATION REGARDING CLAIMS I & II

Mr. Mejia respectfully objects to the Honorable Magistrate's Report and Recommendation concerning claims I & II, as Mr. Mejia believes that the correct procedural ruling was not applied to his circumstances, and that the evidence against him is so minimal and questionable that further consideration of his claims is necessary.

The Honorable Magistrate, concerning claim I, maintains that: 1) Mr. Mejia's trial counsel waived any right to review of his claim when he failed to object to several instances of prosecutorial misconduct in closing arguments; 2) that even under the plain-error standard of review, the alleged instances of misconduct did not amount to trial court error prejudicing Mr. Mejia, and; 3) under the United States Supreme Court standard for evaluating ineffective assistance of counsel, Mr. Mejia's attorney did not provide ineffective representation in light of the record evidence.

Mr. Mejia concedes that his trial attorney did fail to object to the alleged instances of prosecutorial misconduct, but that the prosecutor's statements to the jury were in fact prejudicial, and may have contributed to the jury's verdict. An instance where trial counsel's failure to object fell well below the standard for effective representation as determined by the Supreme Court's decision in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).

(1)

As to Mr. Mejia's attorney's failure to object to the prosecution's closing arguments, Chief Justice Burger, with great wisdom, observed what has been universally recognized by practioners, that "interruptions of arguments, either by opposing counsel or the presiding judge, are matters to be approached cautiously." United States v. Young, 105 S.Ct. at 1046. Therefore, even though Mr. Mejia's counsel possibly being guided by the words of Justice Burger, failed to object, or request a bench conference out of the hearing of the jury, it did not give the prosecution an open opportunity to abuse the rules of the courts. The Supreme Court in Young makes it clear that the object of a fair trial is for both the government and defense to confine themselves within the bounds of professional ethics in presenting their arguments to the jury. So, even in this particular instance, where the state accuses Mr. Mejia's counsel of opening the door for the prosecution's statements by his "suggestion" that their witness was not to be believed, it [did not] invoke the "invited response rule". The failure of one side to observe the rules does not confer on opposite counsel the license to right the scale by engaging in equally inappropriate conduct. See United States v. Ebens, 800 F.2d at 1437 (6th Cir. 1986).

In Mr. Mejia's case the state repeatedly vouched for it's witness. The prosecutor said: "It is impossible for Mikolay to have been lying to you or to me. It is absolutely impossible,

(2)

because the things that he told the police, and the things that happened that verify what he told the police, are so many and so numerous, that it's totally impossible for him to have made it up." Tr. 467-468.

The prosecutor then tells the jury at least six (6) more times that: "It's impossible for him to have lied..." (Tr. 468 at lines 18-19.) "It's impossible that he would have lied." (Tr. 469 at line 7.) "Impossible for him to have lied." (Tr. 470 at line 15.) "It's impossible for Mikolay to have lied." (Tr. 471 at line 9.) "It's absolutely impossible that what Mikolay has said is not true in every detail." (Tr. 471 at lines 17-18.)

It cannot be said that the prosecutor's vouching of credibility was an isolated incident. The prosecutor told the jury a total of nine (9) times that it was "impossible" for his witness to be lying. The Americam Heritage Dictionary, 3rd Edition, at pg. 420 defines "impossible" as: 1) Incapable of existing or occuring. 2) Not capable of being accomplished. Therefore, if a presented testimony is held to be incontrovertible by the prosecution, a jury would have no choice but to believe that testimony. This in and of itself shifts the burden of proof to Mr. Mejia.

Thus, even though counsel failed to object to the multiple instances of prosecutorial misconduct, under the plain

(3)

error doctrine of Criminal Rule 52(b), a reviewing court may correct a particularly egrigious error. See U.S. v. Frady, 456 U.S. 152,163 (1982). Mr. Mejia strongly maintains that this is an instance where the prosecution's misconduct seriously affected the fairness, and integrity of his proceedings. See United States v. Atkinson, 297 U.S. 157,160 (1936).

The prosecutor informed the jury that it was impossible for his witness to have lied, but in review of the evidence a different view can be established. Mikolay was charged with major drug offenses, but was given a get out of jail free card for his testimony against Mr. Mejia and Mr. Polanco. This in itself places doubt upon his credibility, as there is nothing more valuable than personal freedom. Mr. Mejia's counsel even established while Mikolay was on the stand that his testimony as to where the drugs came from was different at Mr. Polanco's trial. Tr. 173. State's witness Agent Gramke of RENU conceded that even though Mr. Mejia was his main target and was under investigation for over six (6) months, no one ever saw Mr. Mejia with or around cocaine. Tr. 255. Similarly, on the day of Mr. Mejia's arrest, no cocaine was found upon his person, in his car, or at his home. Tr. 260. In fact all narcotics and drug paraphernalia were found in a residence not owned by Mr. Mejia, and where he had only been witnessed at one (1) time. Tr. 253-254. And as for the alleged taped conversation of Mr. Mejia and Mikolay setting up a drug deal, there is absolutely no evidence that Mr. Mejia is the voice on that tape, no type of

(4)

scientific testing was performed to definitively prove who the voice on the tape was, nor did the police observe Mr. Mejia talking on the phone when the deal was arranged. Any other evidence against Mr. Mejia is completely circumstantial.

Mr. Mejia suggests to this Honorable Court that Agent Gramke of RENU would have done anything to make another big bust, and that the state's witness Mikolay did and said exactly what Agent Gramke wanted him to say whether truthful or not.

Mr. Mejia's counsel asked Agent Gramke the following:

(Q) Okay. And don't think it's possible that someone who is charged with major drug charges would try to do anything they can to assist law enforcement to get a lesser sentence?

(A) I think he would do whatever he was told by us at that point.

Wherefore, Mr. Mejia respectfully requests that this Honorable Court reconsider the Magistrate's Recommendation on claim I, and grant the appropriate relief.

In regard to the Honorable Magistrate's Report and Recommendation concerning claim II, Mr. Mejia concedes that in several respects the Magistrate's assertions are accurate. Mr. Mejia's habeas counsel did not effectively argue or support this claim with applicable case law. The use of both

(5)

Kumho Tire Co.,Ltd. v. Carmichael, 526 U.S. 137 (1999), and Daubert v. Merrel Dow Pharmaceutical, 509 U.S. 579 (1993) were poor choices to support Mr. Mejia's claim, as they specifically apply to federal court proceedings and do not involve federal constitutional principals. However, Mr. Mejia believes that the Magistrate's de novo review of this claim did not take in full consideration of Agent Gramke's extensive testimony that was greatly based on hearsay allegedly provided by non-testifying confidential informants. Mr. Mejia maintains that not only was the testimony to some degree personally motivated, but that it was purposely designed to inflame the passions of the jury by misleading them into believing that he was responsible for many more crimes than actually charged with, ie. interstate trafficking of cocaine, New York to Ohio, and that Mr. Mejia earned approximately $300,000 per kilo of cocaine sold.

At trial, other than the testimony of the questionable Mikolay, there was absolutely no evidence that Mr. Mejia or anyone who allegedly worked for him ever actually brought any cocaine form New York to Ohio, nor were federal trafficking charges ever filed against Mr. Mejia. Additionally, the man actually accused by Mikolay of trafficking the cocaine in from New York was acquitted of all counts at his seperate trial.

Wherefore, Mr. Mejia respectfully requests that the Magstrate's recommendation on this claim be reconsidered after a full review of Tr. 192-275, as prejudice can clearly be seen.

(6)

## OBJECTIONS TO REPORT & RECOMMENDATION REGARDING CLAIMS III & IV

Mr. Mejia respectfully objects to the Honorable Magistrate's Report and Recommendation concerning amended claims III & IV, as the sentence imposed upon him is in all respects illegal, and counsel was ineffective for failing to address this claim on direct appeal. Mr. Mejia maintains that the aforementioned claims constitute an egregious violation of the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution, and failure to consider these claims would result in a complete miscarriage of justice. See Reed v. Farley, 512 U.S. 339, 348 (1994) (quoting Hill v. U.S., 368 U.S. 424, 428 (1962). The facts are as followed.

Ohio Revised Codes § 2929.14 and § 2929.19 were enacted as part of Senate Bill No. 2 in 1996. S.B. 2, which represents the first major criminal reform bill since 1974, was signed into law on August 10, 1995, and became effective on July 1, 1996. This comprehensive bill changed the definitions of crimes and the entire sentencing system. The law now provides precise guidelines for criminal sentencing within clearly defined constraints. Pursuant to § 2929.11 through § 2929.19, a trial court must now follow an articulated process when determining a sentence. See State v. Comer, 793 N.E.2d 473 (2003). Attached in Appendix at pg. 3, [¶ 10].

(7)

In Mr. Mejia's case, as in [all] cases where crimes were committed on or after July 1, 1996, the trial court had a mandatory obligation to consider certain factors when imposing a prison term on a first-time offender, or when sentencing an individual to non-minimum, maximum, or consecutive terms. Also, it is explicitly stated in both § 2929.14(B) and § 2929.19(B)(2)(c) that when a first-time offender is sentenced to non-minimum or consecutive terms, the trial court must make specific findings, and relate those findings to the offender and the crime committed. The purpose for this is that Ohio Revised Code § 2929.14(B) holds that if a defendant has not previously served a prison term, the court shall impose the minimum prison term authorized for the offense unless the court states on the record that the shortest term would demean the seriousness of the offense, and also, because § 2929.19(B)(2)(c) only authorizes consecutive terms for the worst offenses and offenders. See Comer in Appendix at pg. 4, [¶ 21] quoting State v. Boland, 768 N.E.2d 1250 (2002). Thus, contrary to the Honorable Magistrate's assertions in her Report and Recommendation, Comer itself is not a new law, but rather a correction of a misinterpretation of a law that has been effective for over eight (8) years, long before Mr. Mejia's sentencing.

The Magistrate in her Report also maintains in the footnotes of page (22) that the trial judge did prepare and file a felony sentencing worksheet, thus fully complying with § 2929.14(B) and

(8)

§ 2929.19(B)(2)(c), as well as the First Appellate District's recent ruling in State v. Nyel, No. C-020640, 2003 WL 22149318 (Ohio Ct.App.Sept. 19, 2003). However, the judge's preparation of a felony sentencing worksheet does not relieve her of the obligation set forth in § 2929.14(B) & § 2929.19(B)(2)(c), nor does the Nyel, supra, relate what the Honorable Magistrate alleges.

Indeed, as can be seen in the Appendix at pages 9-12, the judge did cause a felony sentencing findings worksheet to be made and filed, except there are several problems with this. First, there is absolutely no proof supplied by the State of Ohio that the felony sentencing worksheet was prepared during the sentencing hearing. It was simply filed on the same day as the hearing, the same as the Judgment Entry of Sentencing. Therefore, this falls very short from complying with the requirements of § 2929.14 & § 2929.19 which mandate findings at the sentencing hearing. See Comer at pg. 4 [¶ 22] For all anyone at this point can prove, the judge made the findings, or rather checked off several reasons in her chambers after the hearing. A hearing which interestingly enough took place only moments after Mr. Mejia's conviction. Again, this falls quite short of the due process requirements of § 2929.14 & § 2929.19. Second, even if for agrument the judge did prepare the aforementioned sentencing worksheet at the hearing, it was of no use to Mr. Mejia or his counsel, as the judge did not state reasons in open court thereby giving counsel an opportunity

(9)

to object to obvious sentencing errors. See <u>Comer</u> at pg. 4 [¶ 22]. Also, the sentencing worksheet falls short of complying with the Revised Code because although several reasons were checked off to support the sentence imposed, the trial court did not relate any of these findings to either Mr. Mejia personally or his offense, therefore, for all purposes the worksheet is meaningless.

Mr. Mejia was a first-time offender, 42-years-old, involved in a non-violent crime, a case no more severe than any other first degree felony drug offense, and contrary to the main reason checked off by the judge for imposing non-minimum and consecutive terms, Mr. Mejia poses no risk to future crimes in the United States, as following the completion of his sentence, he will be directly deported, never being allowed to return again. Under the sentencing provisions of § 2929.11 through § 2929.19, Mr. Mejia, if the court had been applying the law, should have sentenced him to no more than ten (10) years. See pages 17-18 of Amended Traverse for break-down of sentence. This, at least in a prima facie aspect demonstrates prejudice.

According to the Honorable Magistrate's interpretation of the First District Appellate Court's decision in the <u>Nyel</u>, <u>supra</u>, which was published one month after the <u>Comer</u> ruling, it was sufficient in the First District up until the <u>Comer</u> decision to simply make written findings when imposing non-minimum or

(10)

consecutive terms of incarceration. It also appears that the Magistrate suggests that like Mr. Mejia, anyone incorrectly sentenced prior to the <u>Comer</u> ruling in 2003 would have to accept the erroneous interpretation of § 2929.14(B) & § 2929.19(B)(2)(c), and have no future posibilities of recourse in the courts. (See Magistrate's footnotes at pages 22 and 23.) What the First District actually stated in <u>Nyel</u> is that their district had wrongfully interpreted § 2929.14(B) & § 2929.19(B)(2)(c), and would have no choice but to remand <u>Nyel</u> whom was sentenced [prior] to the <u>Comer</u> decision, back to the trial court for resentencing consistent with the Ohio Supreme Court's opinion in <u>Comer</u>. It does not state that the door is now closed for all others who were erroneously sentenced. See <u>Nyel</u> in Appendix at pg. 13.

The Ohio Supreme Court's decision in <u>Comer</u> has so many similarities to Mr. Mejia's case, and also some very relevant differences. Mr. Mejia like <u>Comer</u>, was sentenced back in 1999. Both are from appellate districts where § 2929.14 & § 2929.19 were wrongfully interpreted. Both of their original appellate attorneys failed to present the sentencing claim on direct appeal. And both filed applications for reopening pursuant to Ohio Appellate Rule 26 (B). But here is the difference; Mr. Mejia's former appellate counsel unlike <u>Comer's</u> would not admit that he made an error in failing to present this viable argument on direct appeal, and Mr. Mejia's application for reopening was filed untimely.

(11)

The Honorable Magistrate holds that Mr. Mejia's counsel is not ineffective for failing to present an argument that would not have won in his district. But here is the problem with that analogy. Even though Lucas County held at the time that under § 2929.14(B) & § 2929.19(B)(2)(c) a trial court was not obligated to make findings in court and relate those findings to the defendant and his crime, Comer's new counsel having been informed that there was a split decision in the various districts concerning the sentencing requirements of § 2929.14 & § 2929.19 Id. Comer at pg. 4, filed a timely application to reopen direct appeal based on this exact argument, and had it granted. And even though Lucas County ultimately denied relief to Comer on the sentencing issue, it gave counsel cause to file a motion to certify conflict, which was then accepted by the Ohio Supreme Court. Obviously Comer's counsel saw no sense of futility in the process. After being informed of the sentencing error by Mr. Mejia, Id. letters to counsel in Motion To Stay And Abey Habeas Proceedings, should his attorney not have tried the same thing? Does this not suggest blatent ineffectiveness on the part of Mr. Mejia's appellate counsel? After all as can be seen in the letter from counsel to Mr. Mejia, Id. Motion To Stay And Abey Habeas Proceedings, counsel informed Mr. Mejia he had no viable claims to present and that he would surely fail in federal court. Should counsel not be held responsible now?

Even if Mr. Mejia's counsel was unfamiliar with relevant decisions out of the surrounding appellate districts, which would have brought him to the same conclusion as Comer's second appellate attorney, he should have been familiar with the sentencing provisions of the Ohio Revised Code. Statutes become law without judicial action—no provisions of the Ohio Revised Code requires a ruling before a statute can be effective. The Ohio Supreme Court expects counsel to be aware of relevant statutes even in absence of judicial decisions. See State v. Kole, Ohio St.3d 303, 306 (2001). Furthermore, lawyers handling felony appeals have no excuses for failing to take time to study and understand relevant statutes and laws. Mr. Mejia's counsel should have, at a minimum, known that the criterion used to impose non-minimum and consecutive sentences on his client, were not even applicable.

Mr. Mejia's appellate attorney failed to present an error that would have ultimately gained him relief, and this, by any reasonable standard is inexcusable. According to Strickland v. Washington, 466 U.S. 688 (1984), and also more recently in Roe v. Flores-Ortega, 528 U.S. 470, 478 (2000), an appellant has been deprived of effective assistance of counsel where it can be shown that: counsel's performance was deficient, and; counsel's deficient performance prejudiced the appeal. In this case it is undeniable from how Comer's attorney won his case that the sentencing issue was viable, and that Mr. Mejia was prejudiced because had his appellate attorney followed the

(13)

reasonable and effective way Comer's counsel represented him, relief would have eventually been granted.

As to the Honorable Magistrate's assertion that Mr. Mejia has defaulted his claims by not complying with the requirements of Ohio Appellate Rule 26(B), Mr. Mejia respectfully holds a different view. Oh.App.R. 26(B)(2)(b) specifically allows for late filing of an application to reopen direct appeal when "good cause" is shown. But, demonstrating "good cause" is not the foremost consideration. A reviewing court must [first] determine if a genuine issue of ineffective counsel has been made. Id. App.R. 26(B)(5); see also State v. Palmer, 749 N.E.2d 749 (2001). In Mr. Mejia's case, the First District Court of Appeals made no such determination, thus failing itself to comply with the statute. Had it though fully reviewed the claims, it would have theoretically come to the exact same conclusion as Lucas County in the Comer case, and granted the application to reopen. Therefore, how can Mr. Mejia be defaulted when the court of appeals did not even follow the correct process themselves?

In closing, Mr. Mejia presents several questions. First, if Mr. Mejia's counsel was in no way ineffective, and for all procedural purposes, the illegal sentencing claim has already run its course through the Ohio Court system, where does that leave him? Are [all] other persons wrongfully sentenced because of a misinterpretation of § 2929.14(B) & § 2929.19(B)(2)(c)

permitted to now go back and receive modifications consistent with the Comer ruling, but not Mr. Mejia? Would it then be this Court's order that Mr. Mejia simply accept the fact that he was illegally sentenced to an additional ten (10) years? And finally, has Mr. Mejia not demonstrated sufficient prejudice to override any suggested procedural defaults and have his claims reviewed? See Wainwright v. Sykes, 433 U.S. 72, 91 (1977) where the United States Supreme Court held that: " the cause-and-prejudice standard would not prevent a federal habeas court from adjudicating for the first time the federal constitutional claim of a defendant who in the absence of such an adjudication will be a victim of a miscarriage of justice." Also see Spalding v. Aiken, 460 U.S. 1093, 1097-98 (1983) where the Court held that actual innocence is not the only viable avenue for overcoming a procedural default. A demonstration of a miscarriage of justice may be satisfactory.

### REASONS WHY A C.O.A. SHOULD BE ISSUED

The United States Supreme Court issued a major pronouncement concerning the standard governing the issuance of Certificates of Appealability pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). In Miller-El v. Cockrell, (2003), 123 S.Ct. 1029, the Court discussed the standards that the AEDPA imposes before a Court of Appeals may issue a COA to review a denial of Habeas relief in the District Court. The standards enunciated by the United States

Court in Miller-El inferentially apply to the issuance of a COA by a District Court as well.

As this Court is well aware, Congress mandates that a prisoner seeking post-conviction relief under 28 U.S.C. § 2254 does not have an automatic right to appeal the denial or dismissal of his petition for habeas corpus relief. Instead, a Certificate of Appealability must be obtained. In Miller-El, the Court held that the controlling standard for habeas corpus petitioners requires a demonstration of "a substantial showing of a denial of a Constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by showing that jurists of of reason could disagree with the District Court's resolution of his Constitutional claim or that jurists could conclude that issues presented are sufficient to deserve encouragement to proceed further. United States v. Miller-El, 154 L.E.d2 at 932, (citing Slack v. McDaniel, 529 U.S. 473 at 484).

Admittedly, Miller-El did not touch on the issue of when a federal habeas petition is dismissed on procedural grounds in the fashion that the Honorable Magistrate recommends in Mr. Mejia's case. Instead, Miller-El is a clearer pronouncement by the United States Supreme Court concerning the controlling standard for the issuance of Certificate of Appealability when reviewing the substance of habeas claims. To the extent that this Court considers the substance of the habeas claims raised by Mr. Mejia, the Petitioner maintains that the re-

(16)

-worked standard of Miller-El must be applied, and that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a Constitutional right.

The Honorable Magistrate recommends that Mr. Mejia's petition be dismissed on the basis that his claims are procedurally defaulted, and that the merits of the claims should not be reached. Mr. Mejia stands on the grounds set forth in the previously stated objections as the basis for demonstrating that his claims were not procedurally defaulted, or alternately that even if the claims were defaulted that it would be a great miscarriage of justice if their merits were not reached.

If the Court ultimately decides to accept the Magistrate's recommendations, then Mr. Mejia respectfully requests that a COA be issued, as he believes that jurists of reason may find it debatable whether the Magistrate's recommendation was the correct procedural ruling, and that valid claims of the denial of a Constitutional right were presented.

As the Supreme Court puts it: "[t]he question is the debatability of the underlying Constitutional claim, not the resolution of the debate." Accordingly, it is respectfully submitted that the Miller-El decision has liberalized the substantive standard for the issuance of COA's, and that Mr. Mejia is entitled to the issuance of a Certificate of Appealability in this case.

(17)

Respectfully submitted,

*Jerbein Eligio Mejia*
Jerbein Eligio Mejia

Petitioner, Pro Se


## CERTIFICATE OF SERVICE

I hereby certify that true copies of the foregoing with all attached documents was sent via U.S. regular mail to Bruce D. Horrigan, Assistant Attorney General, Corrections Litigation Section, 615 West Superior Avenue, 11th Floor, Cleveland, Ohio 44113-1899 on this 26TH day of January, 2004.

*Jerbein Eligio Mejia*
Jerbein Eligio Mejia
Inmate Number A391-808
Ross Correctional Institute
16149 State Route 104
Chillicothe, Ohio
45601-7010
(440) 539-9619